UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | 07 Cr 406 (RJS) |
| CLYDE W. HALL, | |
|    a/k/a "Peter Hall," and | |
| ANNE HALL, | NOTICE OF |
|    a/k/a "Anne Torselius," | OMNIBUS MOTION |
|    a/k/a "Anne Torselius Hall," | |
| | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PLEASE TAKE NOTICE that upon the annexed motion; Memorandum of Law; affidavits of Clyde Hall, Anne Hall, and Lauren Hall; and upon all prior proceedings, the defendant CLYDE HALL, by his attorney James A. Cohen, Esq., will move this Court before the Honorable Richard J. Sullivan, United States District Judge for the Southern District of New York, sitting at the Daniel Patrick Moynihan United States Courthouse, Courtroom 21C, 500 Pearl St., New York, New York on a date and at a time designated by the Court:

    1.    Pursuant to Fed. R. Crim. P. 12(b)(3)(D) and 8(a), to sever count five from the indictment, on the grounds that joinder of the count with the other counts in this indictment is improper (*i.e.*, misjoinder).

    2.    Alternatively, pursuant to Fed. R. Crim. P. 12(b)(3)(D) and 14, to sever count five from the indictment, on the grounds that joinder of the count with other counts in the indictment is unfairly prejudicial.

    3.    Pursuant to Fed. R. Crim. P. 12(b)(3)(C) and 41(h), to suppress all evidence seized during January 9th search of 270 Riverside Drive.

4.  Pursuant to Fed. R. Crim. P. 12(b)(3)(C), to suppress seized documents, electronic messages and the like that are privileged communication between defendant and his legal counsel.

5.  Pursuant to Fed. R. Evidence 404(b), to request that the Government be directed to disclose all evidence of other or similar crimes, wrongs or acts allegedly committed by defendant upon which the Government intends to introduce at trial sufficiently in advance of trial to permit counsel to investigate. Such disclosure should include, but not be limited to, the following descriptions of the other alleged crimes, wrongs, or acts the Government intends to offer into evidence against the defendant under Rule 404(b):

   a.  The date or dates on which such alleged crimes, wrongs, or acts allegedly occurred;

   b.  The place or places at which such alleged crimes, wrongs, or acts allegedly occurred;

   c.  The names and addresses of all persons who were witnesses to, or have knowledge of such alleged crimes, wrongs, or acts;

   d.  Copies of all documents, materials, or other tangible objects that the Government intends to offer into evidence concerning such alleged crimes, wrongs, or acts;

   e.  All exculpatory evidence, within the purview of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), with regard to such alleged crimes, wrongs or acts evidence (*i.e.*, all evidence that detracts from the probative value of the Rule 404(b) evidence, or that indicates that the probative value of the Rule 404(b) evidence might be outweighed by its prejudicial effect); and

      f.      A statement of the purpose for offering the Rule 404(b) evidence (*i.e.*, a declaration from the government concerning whether the evidence is being offered to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake accident, or any other such purpose).

      6.      Pursuant to *Brady v. Maryland*, to request exculpatory material. Defendant's request for Brady materials includes, but is not limited to, the following:

      a.      Any written or recorded statement of any person that contains information favorable to the defendant;

      b.      The substance of any oral statement that contains information favorable to the defendant;

      c.      The names and addresses of all persons who have, or who may have, information favorable to the defendant;

      d.      The names and addresses of all persons interviewed by the Government, or any of its agencies, in connection with this investigation but who the Government does not intend to call as witnesses in this case.

      e.      Any information which may tend to adversely affect the credibility of any persons called as a witness by the Government, including the arrest and/or conviction record of each Government witness, and including any offers of immunity or lenience, whether made directly or indirectly, to any Government's witness in exchange for testimony.

7. Permission to file additional motions.

Dated: New York, New York
      Februrary 4, 2008

                                                 Respectfully submitted,

                                                 James A. Cohen, Esq.
                                                 Michael W. Martin, Esq.
                                                 **LINCOLN SQUARE LEGAL SERVICES, INC.**
                                                 33 West 60th Street, 3rd Floor
                                                 New York, New York 10023
                                                 (212) 636-6934

                                                 *Attorneys for Clyde Hall*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA
    v.
CLYDE W. HALL
    a/k/a "Peter Hall," and
ANNE HALL,
    a/k/a "Anne Torselius,"
    a/k/a "Anne Torselius Hall"

        Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07 Cr 406 (RJS)

**MEMORANDUM OF LAW**

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CLYDE HALL'S
OMNIBUS MOTION FOR SEVERANCE AND SUPPRESSION OF
EVIDENCE

James A. Cohen, Esq.
Michael W. Martin, Esq.
**LINCOLN SQUARE LEGAL SERVICES, INC.**
33 West 60th Street, 3rd Floor
New York, New York 10023
(212) 636-6934

*Attorneys for Clyde Hall*

*Legal Interns*
Christopher M. Barrett
Chae Kim
Anu R. Sawkar

TABLE OF CONTENTS

Preliminary Statement............................................................................................. 1

Argument

I. COUNTS ONE THROUGH FOUR SHOULD BE SEVERED FROM COUNT FIVE BECAUSE THE COUNTS ARE NOT OF THE SAME OR SIMILAR CHARACTER; BASED ON THE SAME ACT OR TRANSACTION; OR CONNECTED WITH, OR CONSTITUTE PART OF, A COMMON SCHEME OR PLAN............... 1

   A. *"Based on the Same Act or Transaction"* ........................... 2

   B. *"Common Scheme or Plan"*.............................................. 3

   C. *"Same or Similar Character"* ........................................ 3

II. COUNTS ONE THROUGH FOUR SHOULD BE SEVERED FROM COUNT FIVE BECAUSE JOINDER OF THE COUNTS IS PREJUDICIAL ........................................................................ 4

III. PRIVILEGED COMMUNICATIONS BETWEEN MR. HALL AND COUNSEL SHOULD BE SUPPRESSED ........................... 5

IV. ITEMS SEIZED DURING THE ARREST OF CLYDE AND ANNE HALL SHOULD BE SUPPRESSED BECAUSE THEY WERE NOT SEIZED PURSUANT TO A SEARCH WARRANT ................ 7

V. ITEMS SEIZED DURING THE ARREST OF CLYDE AND ANNE HALL SHOULD BE SUPPRESSED BECAUSE THE THE SEARCH WARRANT WAS "THE FRUIT OF THE POISONOUS TREE" ................................................................ 9

VI. MR. HALL'S REQUEST FOR DISCLOSURE OF SIMILAR CRIMES, WRONGS OR ACTS ALLEGEDLY COMMITTED BY HIM SHOULD BE GRANTED ..................................................11

VII. MR. HALL'S REQUEST FOR DISCOVERY OF BRADY MATERIAL SHOULD BE GRANTED ......................................12

Conclusion ..................................................................................................13

PRELIMINARY STATEMENT

Severance should be granted because the indictment charges Clyde Hall with two different unrelated crimes. Counts one through four charge Mr. Hall with wire fraud and conspiracy to commit wire fraud, and Count five charges Mr. Hall and his wife, Anne Hall, with bankruptcy fraud. The wire fraud counts are based on an "advance fee" scheme which allegedly involves Mr. Hall promising that he can obtain financing for a "victim" if provided with an advance fee. The Government contends that the fee is then provided but the financing is not. The bankruptcy fraud is based on allegedly false filings in Bankruptcy Court signed by both Halls in the course of attempting to avoid being evicted from their apartment.

Suppression should be granted because: 1) at least in part, the seizure included documents protected under the attorney-client privilege; 2) the Government conducted a full blown search of Mr. Hall's residence before ever being issued a search warrant; and 3) the search warrant is the "fruit of the poisonous tree."

POINT I

COUNTS ONE THROUGH FOUR SHOULD BE SEVERED FROM COUNT FIVE BECAUSE THE COUNTS ARE NOT OF THE SAME OR SIMILAR CHARACTER; BASED ON THE SAME ACT OR TRANSACTION; OR CONNECTED WITH, OR CONSTITUTE PART OF, A COMMON SCHEME OR PLAN

The first four counts (wire fraud) should be severed from the fifth count (bankruptcy fraud) because the counts are improperly joined. Joinder of the offenses is governed by Rule 8(a), which states that an "indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . [1] are of the same or similar character, or [2] are based on the same act or transaction, or [3] are connected with or constitute parts of a common scheme or

plan." Fed. R. Crim. P. 8(a). When determining if joinder is proper under Rule 8(a), "no one characteristic can be singled out as providing the necessary similarity, and 'each case depends largely on its own facts.'" *United States v. Smith*, No. 05 Cr 922 (DLC), 2007 WL 980431, at *2 (S.D.N.Y. April 3, 2007) (quoting *United States v. Blakely*, 941 F.2d 114, 116 (2d Cir. 1991)).

A. *"Based on the Same Act or Transaction"*

The wire fraud offenses and bankruptcy fraud offenses are not "based on the same act or transaction." (*Compare* Indictment ¶¶ 12 & 14, *with* ¶ 22 (overt acts alleged in indictment)). There is no factual or legal relationship between the advance fee scheme alleged in the wire fraud counts and the fraud alleged in the bankruptcy count. Moreover, the alleged frauds occurred in non-overlapping time periods. *Id.* The acts that constitute the bankruptcy count occurred between August 2004 and December 2004; whereas the acts that constitute the wire fraud counts occurred between June 2005 and May 2006. *Id.*

One gauge that shows joinder is proper is when "the same evidence may be used to prove each count." *United States v. Amato*, 15 F.3d 230, 236 (2d Cir. 1994). However, this is not present in this case. The wire fraud counts will not "involve substantially the same proof" as the bankruptcy fraud counts. *United States v. Bezmalinovic*, No. S3 96 CR. 97 MGC, 1996 WL 737037, at *4 (S.D.N.Y. Dec. 26, 1996) (citing *United States v. Sweig*, 441 F.2d 114, 118 (2d Cir. 1971). In the wire fraud case, the Government will likely attempt to prove wire fraud by using Mr. Hall's communications between himself and his alleged co-conspirators and alleged victims. On the other hand, the Government's proof with respect to the bankruptcy fraud count will revolve around the veracity of the Halls' bankruptcy filings—that is whether the Halls made false statements in the course of the bankruptcy filing.

B. *"Common Scheme or Plan"*

Additionally, the wire fraud allegations and bankruptcy fraud allegations are not "connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The acts as alleged do not constitute a common scheme—the wire fraud counts involve allegations of running an "advanced fee" scheme to defraud while the bankruptcy count involves the filing of fraudulent bankruptcy petitions. The two acts also do not make up a common plan; indeed the alleged bankruptcy violations occurred at least seven months before the wire fraud acts. (*Compare* Indictment ¶¶ 12 & 14, *with* ¶ 22 (overt acts alleged in indictment)).

C. *"Same or Similar Character"*

Finally, the offenses are not sufficiently "similar" to be considered of a "similar character." The Second Circuit has defined "similar character" to mean "[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness." *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980) (quoting Webster's New International Dictionary (2d ed)). The Southern District applied the *Werner* definition in *United States v. Bezmalinovic*, No. S3 96 CR. 97 MGC, 1996 WL 737037, at *3 (S.D.N.Y. Dec. 26, 1996). In *Bezmalinovic*, the Government argued that tax fraud was "of the same or similar character" as contract and insurance fraud because "(1) [defendant's] goal was to obtain and retain money; (2) [defendant] sought to achieve this goal through deception and fraud; and (3) [defendant] carried out his offenses through various companies that he controlled and dominated." *Id.* at *2. The court held the Government's reasoning deficient, stating, "[i]t is true that 'similar' does not mean 'the same.' It is also true that in some senses, all fraudulent schemes are 'similar' to each other. The similarities cited by the Government, however, are not sufficient . . . to be considered of a 'similar character' . . .

3

within the meaning of Rule 8(a)." *Id.* (citing *Werner*, 620 F.2d at 926). The facts of this case parallel *Bezmalinovic*. The fact that the alleged offenses involve "fraud" is too broad and is insufficient to meet the "similar character" threshold.

POINT II

COUNTS ONE THROUGH FOUR SHOULD BE SEVERED FROM COUNT FIVE BECAUSE JOINDER OF THE COUNTS IS PREJUDICIAL

Alternatively, if the Court finds that joinder is proper, the offenses should be severed because joinder prejudices Mr. Hall. Rule 14 of the Federal Rules of Criminal Procedure which states that "[i]f the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant . . . , the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). In order to prevail, "substantial prejudice must be shown." *United States v. Turoff*, 553 F.2d 1037, 1043 (2d Cir. 1988). It is not enough to show simply that defendant would have had a better chance for acquittal at a separate trial. *See United States v. Corr*, 543 F.2d 1042, 1052 (2d Cir. 1976).

The Second Circuit has noted that "[c]ourts have recognized that 'prejudice may develop when an accused wishes to testify on one but not the other . . . joined offense[] which [is] clearly distinct in time, place and evidence.'" *United States v. Sampson*, 385 F.3d 183, 190-91 (2d Cir. 2004) (*quoting Cross v. United States*, 335 F.2d 987, 989 (D.C. Cir. 1968)). At this time, Mr. Hall does not have such a wish. It is too early to know for certain to what Mr. Hall will or will not testify. For this reason, we request permission to make such a motion closer to trial, if needed.

Furthermore, this case presents a similar but unique circumstance. Mr. Hall is prejudiced by the joinder of the offenses because it creates a situation where his wife—

4

and co-defendant—may not be able to testify on behalf of her husband because she does not want to be questioned about the charges against her. Mrs. Hall will be forced to make a difficult decision—one that could substantially weaken Mr. Hall's defense. However, severing the counts would cure this dilemma. If severed, Mrs. Hall could freely testify in the wire fraud trial without sacrificing her Fifth Amendment right. Again, given the difficulty of gauging the necessity and substance of that testimony at this time, we request permission to make such a motion closer to trial, if necessary.

Additionally, if the allegations are tried together, the Government will be allowed to make an "end-run" around Rule 404(b) of the Federal Rules of Evidence, which forbids using evidence of "other crimes, wrongs, or acts" to show that the defendant acted in conformity with such acts. If these allegations were tried separately, the Government would be unable to introduce evidence of the other allegation—protecting Mr. Hall from unfair prejudice.

POINT III

PRIVILEGED COMMUNICATIONS BETWEEN MR. HALL AND COUNSEL
SHOULD BE SUPPRESSED

Mr. Hall asserts his attorney-client privilege and moves this Court to suppress all communications listed in the attached privileged logs (*see* privileg logs attached to Clyde Hall Aff.). Mr. Hall asserts this privilege in both his individual and representative capacity. Privileges are governed by the common law, *see* Fed. R. Evid. 501, and "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The "party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended

to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). All communications listed in the attached log were between (i) Mr. Hall and various counsel, (ii) were intended to be confidential; and (iii) were made for the purpose of legal advice. Communications may have either been between Mr. Hall—acting as an individual—and his personal attorney; or between him—acting on behalf of an entity—and its attorney. (*See* Clyde Hall Aff. ¶ 11). In either situation, Mr. Hall has the authority to assert this privilege. (*See* Clyde Hall Aff. ¶ 10).

Mr. Hall asserts the attorney-client privilege on behalf of Gramercy International Investment Trust. A trustee has standing to invoke the attorney-client privilege or the authority to waive it, *Martin v. Valley Nat'l Bank of Ariz.*, 140 F.R.D. 291, 324-25 (S.D.N.Y. 1991), and Clyde Hall has power-of-attorney to act on behalf of Kim Williamson, the trustee of Gramercy International Investment Trust. (*See* Clyde Hall Aff. ¶ 10). It follows that Clyde Hall has standing to invoke the privilege with regards to attorney-client communications between Gramercy International Investment Trust and its attorneys.

Clyde Hall asserts the attorney privilege on behalf of American Swiss Trust LLC. "[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985). Clyde Hall's son, Alex Hall, is the managing member of American Swiss Trust LLC. Clyde Hall has power-of-attorney to act in his stead. (*See* Clyde Hall Aff. ¶ 10). Neither Alex Hall nor Clyde Hall has waived the attorney-client privilege of American Swiss Trust LLC.

POINT IV

ITEMS SEIZED DURING THE ARREST OF CLYDE AND ANNE HALL
SHOULD BE SUPPRESSED BECAUSE THEY WERE NOT SEIZED
PURSUANT TO A SEARCH WARRANT

On the morning of January 9, 2007, federal agents conducted a broad, warrantless search of 270 Riverside Drive #9A, New York, NY 10025. The agents gained access to the premises because they had arrest warrants for Mr. Hall and Anne Hall. The agents arrived at the Halls' residence between 6:30 and 7:00 a.m. and represented to the Halls that they had a search warrant for the premises (Clyde Hall Aff. ¶ 3). Immediately upon entering the apartment, the agents began searching (Clyde Hall Aff. ¶ 6; Anne Hall Aff. ¶ 6). They opened closets, rifled through desk drawers, dressers, and file cabinets, and examined files on Mr. Hall's computer (Clyde Hall Aff. ¶ 6; Anne Hall Aff. ¶ 6). The agents spent over five hours searching Mr. Hall's office before a search warrant was issued (Lauren Hall Aff. ¶ 4).

"There is no principle more firmly rooted in our constitutional jurisprudence than that warrantless search is presumptively illegal." *United States v. Gamble*, 473 F.2d 1274, 1276 (7th Cir. 1973). The search of Mr. Hall's apartment was neither performed pursuant to a search warrant nor did the search fall under any relevant exception to the warrant requirement. Once inside the apartment, the agents opened and searched inside closets, dressers, and file cabinets in addition to examining files on Mr. Hall's computer ((Clyde Hall Aff. ¶ 6; Anne Hall Aff. ¶ 6; Lauren Hall Aff. ¶ 4); none of these locations qualify under the plain view exception. *See, e.g., U.S. v. Vasquez*, 638 F.2d 507, 530-33 (2d Cir. 1980).

Furthermore, the search was not legitimately conducted incident to lawful arrest. The degree of an officer's right to make a warrantless search incident to arrest is governed by *Chimel*

7

*v. California*, 395 U.S. 752 (1969). According to *Chimel*, when making an arrest there is generally "ample justification . . . for a search of the arrestee's person and the area within his immediate control." *United States v. Mason*, 523 F.2d 1122, 1125 (D.C. Cir. 1975) (construing *Chimel*) (emphasis added). "Of course, Chimel does not permit the arresting officers to lead the accused from place to place and use his presence in each location to justify a search incident to arrest." *Mason*, 523 F.2d at 1126 (internal quotation marks omitted) *quoted in United States v. Whitten*, 706 F.2d 1000, 1016 (9th Cir. 1983); *United States v. Roper*, 681 F.2d 1354, 1359 n.4 (11th Cir. 1982); *United States v. Wright*, 577 F.2d 378, 381 (6th Cir. 1978); *United States v. Griffith*, 537 F.2d 900, 904 (7th Cir. 1976). In other words, the officers "did not have the right to create a situation which gave them a pretext for searching beyond the area of defendant's immediate control." *United States v. Griffith*, 537 F.2d 900, 904 (7th Cir. 1976). In *Chimel*, the Supreme Court explained that

> [t]here is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs-or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less.

*Chimel*, 395 U.S. at 763.

The policy rationale of permitting a warrantless search incident to arrest is (1) to protect the arresting officer from possible attack with weapons and (2) to prevent the destruction of evidence by the arrested person at the time of arrest. *See Chimel*, 395 U.S. 725, 762 (1969). The agents were not performing a search to ensure their safety. The facts do not indicate that Mr. Hall presented or was considered to present any threat to the agents. Indeed, he notified the agents that there were no firearms on the premises. (Clyde Hall Aff. ¶ 5). In addition, the agents were not merely protecting evidence from destruction. They carried boxes out of the office

(Anne Hall Aff. ¶ 6) and continued to do so even after Mr. and Mrs. Hall had been escorted off the premises. (Lauren Hall Aff. ¶ 4).

The agents' actions were an impermissible "confirmatory search." In *Murray v. United States*, the Supreme Court addressed the admissibility of items obtained from a search pursuant to warrant where the officers had entered and surveilled the premises prior to obtaining the warrant. 487 U.S. 533 (1988). The agents in *Murray* did not rely on observations made during the initial entry to obtain the warrant, and the Court determined that the agents' decision to seek the warrant was not prompted by what they had seen during the initial illegal entry. *Id.* at 536, 541. The Court held that such evidence is not admissible if (1) if "the agents' decision to seek the warrant was prompted by what they had seen during the initial entry" or (2) if "information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Id.* at 543. Both of these conditions pertain to the search conducted at the Halls' residence. The agents used what they saw during their initial entry to obtain the warrant and this information likely affected the magistrate's decision to issue the warrant. (*See* written affidavit in support of search warrant ¶¶ 36-37).

### POINT V

### ITEMS SEIZED DURING THE ARREST OF CLYDE AND ANNE HALL SHOULD BE SUPPRESSED BECAUSE THE SEARCH WARRANT WAS "THE FRUIT OF THE POISONOUS TREE"

Mr. Hall moves to suppress the items seized during the January 9th search of the Hall residence because the probable cause underlying the issuance of the search warrant was obtained by illegal search. The initial arrest occurred in the residence's large

9

foyer—a space with ample floor area to effectuate the arrest. However, because Mr. Hall needed to dress, the agents were authorized—as they did—to escort Mr. Hall to his closet. (*See* Clyde Hall Aff. ¶ 6). The route to the office, where Mr. Hall kept his clothes, was down a long hallway at the opposite end of the apartment. In the march from foyer to office, there is no need to enter any other rooms. However, instead of leading Mr. Hall to get dressed, the agents escorted Mr. Hall into the living room—a room adjacent to the foyer but further away from the office. It is there where the search warrant affiant saw a clipboard, which was mentioned in the search warrant affidavit (*see* Search Warr. Aff. ¶ 37). Because the agents had neither prerogative nor permission to be in the living room, the search of the clipboard was illegal.

The clipboard was used to establish probable cause in the search warrant affidavit. (*See id.* ¶ 37). Because the clipboard, along with an unopened letter, were the only two discoveries mentioned in the search warrant affidavit (*see id.* ¶ 37) and because the agents did not have a search warrant that morning, it follows that the agents believed they lacked probable cause for a valid search warrant pre-arrest. Therefore, the search incident to arrest exception was utilized to obtain the necessary probable cause. Because the clipboard search was the "seed" of the poisonous tree, everything obtained as a consequence is "fruit" of the tree. Consequently, *all* "fruit" of the poisonous tree—tangible and intangible—seized on January 9, 2007 must be suppressed.

Besides being unconstitutional, the items and data should be suppressed as a matter of public policy—to disincentivize the kind of practices displayed that day. An arrest warrant should be used to carry out an arrest and not be abused and converted into a quasi-search warrant.

> "[Fourth Amendment prohibitions apply] to all invasions on the part of the government and its employés of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty and private property."

*Hudson v. Michigan*, 126 S. Ct. 2159, 2172 (2006) (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)).

POINT VI

MR. HALL'S REQUEST FOR DISCLOSURE OF SIMILAR CRIMES, WRONGS OR ACTS ALLEGEDLY COMMITTED BY HIM SHOULD BE GRANTED

Rule 404(b) states that the Government shall provide the defendant "reasonable notice in advance of trial" of the Government's intent to use such evidence, unless excused for good cause. Fed. R. Evid. 404(b). The Second Circuit permits the introduction of evidence under Rule 404(b) if "(1) it is introduced for a proper purpose, (2) it is relevant to the charged offense, (3) its prejudicial effect does not substantially outweigh its probative value, and (4) it is admitted with a limiting instruction if requested." *U.S. v. Rutkoske*, 506 F.3d 170, 177 (2d Cir. 2007) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir.2003)).

Mr. Hall cannot determine whether any Rule 404(b) evidence offered against him meets this standard unless he is given sufficient time to investigate the evidence. Even if the Court eventually admits the evidence, due process demands that the evidence be disclosed to Mr. Hall with sufficient advance notice so that he has adequate opportunity to defend against, or rebut, such evidence. Requiring the Government to disclose any Rule 404(b) evidence that it intends to offer sufficiently in advance of trial will permit counsel to investigate the evidence and determine whether it is inadmissible under applicable precedent and, if so, draft appropriate

11

motions in limine for the Court's consideration prior to trial. Mr. Hall further asks that the Government's Notice of any Rule 404(b) evidence that it intends to offer at trial be specific enough to permit Mr. Hall to properly prepare his defenses concerning the evidence.

## POINT VII

### MR. HALL'S REQUEST FOR DISCLOSURE OF BRADY MATERIAL SHOULD BE GRANTED

Pursuant to the provisions of the Fifth and Sixth Amendments to the Constitution of the United States, the Government must make available for Mr. Hall's inspection and copying any evidence or information within the possession, custody or control of the Government, or any of its agencies, the existence of which is known, or by the exercise of due diligence may become known, and which is favorable to Mr. Hall on the issue of guilt or innocence or which may tend to mitigate or lessen punishment in the event the jury should return a verdict of guilty. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *Giglio v. United States*, 405 U.S. 150, 92 (1972); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392 (1976).

## CONCLUSION

For all of the aforementioned reasons, it is respectfully submitted that the Court should order the severance of offenses as a result of being improperly joined, or in the alternative, order the severance of offenses because joinder prejudices Mr. Hall; order the suppression of all items seized as a result of a warrantless search, or in the alternative, order the suppression of all items seized because the basis for the probable cause was illegally searched; order the suppression of all items that constitute privileged communications between Mr. Hall and his counsel; and grant such other relief as the Court deems warranted.

Dated: New York, New York
February 4, 2008

Respectfully submitted,

*[signature]*

James A. Cohen, Esq.
Michael W. Martin, Esq.
LINCOLN SQUARE LEGAL SERVICES, INC.
33 West 60th Street, 3rd Floor
New York, New York 10023
(212) 636-6934

*Attorneys for Clyde Hall*

*Legal Interns*
Christopher M. Barrett
Chae Kim
Anu R. Sawkar