UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 07 Cr 406 (RJS) |
| CLYDE W. HALL | : | |
|     a/k/a "Peter Hall," and | | |
| ANNE HALL, | : | **AFFIDAVIT OF** |
|     a/k/a "Anne Torselius," | : | **LAUREN HALL** |
|     a/k/a "Anne Torselius Hall" | : | |
| | : | |
| Defendants | | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LAUREN HALL, the undersigned affiant, hereby swears under oath that the foregoing is true and correct:

1. I am Lauren Hall, daughter of Peter Hall, a defendant in the above-captioned matter. The following facts are based on my personal knowledge.

2. Between 7:00 a.m. and 7:30 a.m. on January 9, 2007, I received a phone call from my stepmother, Anne Hall. She told me that the FBI was arresting both her and my father, Peter Hall, and asked if I could come to the apartment on 270 Riverside Drive #9A, New York, NY 10025 to watch my youngest half-brother Marcus.

3. When I arrived at the apartment, I found out that the FBI wanted to escort my other half-brother, Myles, to school. I didn't want Myles to be scared by the experience of being taken to school by the FBI, so I volunteered to take him to school.

4. As I returned to the apartment at about 10:30 a.m., I ran into Anne in the lobby as she was being escorted out of the building by agents. While I was in the apartment, there were

several agents—at least seven—walking around, opening closet doors and drawers in the main bedroom, closets in the hallway, cabinet in the dining room. I saw agents searching in the living room, the dining room, and the room adjacent to the foyer.

5. As I walked back down the hallway I saw agents going through the closets and the dresser drawers in my dad's bedroom. I wanted to make phone calls and I know that he keeps a list of contact numbers for family members and his lawyers on a clipboard. I noticed that the agents in the living room had the clipboard. They were looking through the pages of the clipboard. The agents would not let me take the clipboard unattended—I was told that the clipboard was very important, and I told them that I needed some of the phone numbers from the list.

6. After I was permitted to take the clipboard, I went to the back of the apartment to the room my dad uses as his office to make phone calls. An agent blocked my access to the office and refused to let me enter. The agent told me that I didn't have the right to enter the office because I was not a resident. The agent also told me that I needed to stay in view of the agents at all times. I told the agents to stop going through my dad's possessions. They told me that I did not have the authority to prevent them from searching because I was not a resident of the house. I argued with the agent, but to no avail. Before 1:00 p.m., I saw agents bring papers from the office to show to other agents near the front of the apartment.

7. After I had the clipboard for an hour or two, but before 1:00 p.m., a U.S. Marshal named John took the clipboard away from me and refused to give it back. He told me he would give me specific phone numbers that I needed. John also told me that they were waiting for a warrant, at which time I asked why they were going through everything without one; he told me that they had a search warrant for the house, but needed one for the office.

8. Between 1:00 p.m. and 1:30 p.m., I heard someone say that a search warrant had been granted. I asked to see it. The agents initially refused. I called Lee Ginsberg and asked him if there was a search warrant, and he said that he would look into it. He subsequently told me that he thought a warrant had been granted in the afternoon. I nagged one of the agents to see the warrant, and he eventually showed me the top of a piece of paper. While the paper had the word "warrant" at the top, he would not show me the rest of the paper, and I never saw my dad's name or the apartment's address on the page.

9. After the agents received the call about the warrant, the activity in the apartment increased—there was more movement, more boxes, more people, different people. The agents allowed me to survey the office from the doorway but they would not let me into the office.

Dated: February 4, 2008
New York, New York

Respectfully Submitted:

_____
LAUREN HALL

Subscribed and sworn to me this
____ day of _____, 2008

_____
Notary Public
(Affix seal or stamp)

DONNA WELENSKY
Notary Public, State of New York
No. 01WE4608744
Qualified in New York County
Commission Expires Sept. 30, 20__