UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                    :

UNITED STATES OF AMERICA          :
        v.                                       :
CLYDE W. HALL                          :
    a/k/a "Peter Hall," and               :
ANNE HALL,                             :          07 Cr 406 (RJS)
    a/k/a "Anne Torselius,"               :
    a/k/a "Anne Torselius Hall"        :
                                                 :
            Defendants                    :
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT CLYDE HALL'S MEMORANDUM OF LAW IN REPLY
TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO SEVER
OFFENSES AND SUPPRESS EVIDENCE**

James A. Cohen, Esq.
Michael W. Martin, Esq.
**LINCOLN SQUARE LEGAL SERVICES, INC.**
33 West 60th Street, 3rd Floor
New York, New York 10023
(212) 636-6934

*Attorneys for Clyde Hall*

*Legal Interns*
Christopher M. Barrett
Chae Kim
Anu R. Sawkar

**TABLE OF CONTENTS**

I.   IN OPPOSING SEVERANCE OF OFFENSES, THE GOVERNMENT APPLIES THE
     WRONG RULE, CONFUSES THE ISSUES BY DISCUSSING ALL JOINDER ARGUMENTS
     TOGETHER, AND FAILS TO SATISFY THE PROPER JOINDER STANDARD ...................... 1

     A.   *In Its Argument Against Severing <u>Offenses</u>, the Government Mistakenly
          Applies the Rule that Governs Joinder of <u>Defendants</u>* ............................. 1

     B.   *The Government Argues as if Joinder of Defendants and Joinder of
          Offenses are Governed by the Same Standard; They Are Not* ..................... 3

     C.   *The Government Incorrectly States that the Defendants Ask Only for
          "Discretionary Severance," but There Is No Discretion When Determining
          if Joinder Is Proper Under Rule 8* ............................................................. 4

     D.   *"Substantial Nexus" Is Not The Correct Standard Under Rule 8(a)* ............. 4

II.  IN ARGUING THAT JOINDER IS NOT PREJUDICIAL, THE GOVERNMENT INCORRECTLY
     ASSERTS THAT EVIDENCE OF THE ADVANCED FEE SCHEME WOULD BE ADMISSIBLE
     TO PUT THE BANKRUPTCY FRAUD INTO CONTEXT ........................................... 6

     A.   *The Government Incorrectly Asserts that Evidence of the Advanced Fee
          Scheme Would Be Admissible to Put the Bankruptcy Fraud into Context* ....... 6

     B.   *The Cases the Government Cites for the Proposition that Mrs. Hall Cannot
          Testify Without Incriminating Herself Are Not Applicable to the Facts of This
          Case* .................................................................................................. 7

III. THE GOVERNMENT INCORRECTLY ASSERTS THAT THE SUPPRESSION CLAIMS
     CAN BE REJECTED WITHOUT A HEARING ......................................................... 8

IV.  THE INDEPENDENT SOURCE DOCTRINE IS NOT APPLICABLE TO THIS CASE BECAUSE
     THE AGENTS EGREGIOUSLY SEARCHED THE HALLS' HOME BEFORE BEING ISSUED A
     SEARCH WARRANT ........................................................................................ 9

V.   EVEN IF THE COURT FINDS THAT THE INDEPENDENT SOURCE DOCTRINE IS NOT PER SE
     INAPPLICABLE, IT SHOULD SUPPRESS THE SEIZED ITEMS BECAUSE THE ILLEGAL
     SEARCH AFFECTED THE AGENTS' DECISION TO SEEK A SEARCH WARRANT ............... 10

     CONCLUSION .............................................................................................. 11

I.  IN OPPOSING SEVERANCE OF OFFENSES, THE GOVERNMENT APPLIES THE WRONG RULE, CONFUSES THE ISSUES BY DISCUSSING ALL JOINDER ARGUMENTS TOGETHER, AND FAILS TO SATISFY THE PROPER JOINDER STANDARD

    A.  *In Its Argument Against Severing <u>Offenses</u>, the Government Mistakenly Applies the Rule that Governs Joinder of <u>Defendants</u>*

In its argument against Mr. Hall's motion to sever <u>offenses</u>, the Government mistakenly applies Rule 8(b), which governs joinder of <u>defendants</u>, instead of Rule 8(a), which governs joinder of <u>offenses</u>.[1] The government incorrectly relies on *United States v. Turoff*, 853 F.2d 1037 (2d Cir. 1988), for the proposition that Rule 8(b) applies when determining if joinder of offenses is proper in a multi-defendant case. However, "[t]he phrase 'multiple defendants . . . charged with multiple offenses' is . . . ambiguous."[2] *United States v. Biaggi*, 705 F. Supp. 852, 854 (S.D.N.Y. 1988) (internal quotation marks omitted). The court in *Biaggi* explained:

> Limited to its facts, *Turoff* stands for the proposition that . . . joinder of multiple offenses against multiple defendants *named in the same counts* [is] to be evaluated under Rule 8(b) rather than 8(a). . . . [T]he Second Circuit clearly recognizes that [joinder of multiple offenses against multiple defendants *not named in the same counts* is] governed by Rule 8(a) . . . .

---

[1]  *Rule 8(b) Joinder of Defendants*. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.
*Rule 8(a) Joinder of Offenses*. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged— whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
Fed.R.Crim. 8.

[2]  There are two possibilities: (1) multiple defendants are all charged with the same counts (e.g., Turoff ); or (2) multiple defendants are not all charged with the same counts (e.g., the instant case). Situation (1) is governed by Rule 8(b) and situation (2) by Rule 8(a). See Figure 1, which compares *Turoff* with *Hall*.

*Id*. at 855; *see also Turoff,* 853 F.2d at 1043 ("[M]ultiple defendants may [only] be charged with and tried for multiple <u>offenses</u> . . . if the <u>offenses</u> are related pursuant to the test set forth in Rule 8(b).") (emphasis added); *United States v. Hundley*, No. S3 02 CR 441(JSM), 2003 WL 21537774, at *2 (S.D.N.Y. July 7, 2003) (agreeing with the "well reasoned and thorough decision of Judge Motley" in *Biaggi* that "when a defendant moves to sever claims in which he alone is named from counts charging him and others, Rule 8(a) provides the governing standard"); *United States v. Clemente*, 494 F. Supp. 1310, 1315 (S.D.N.Y. 1980) ("When a defendant in a multi-defendant case named in one count seeks to sever other counts in which he alone is charged, Rule 8(a) controls.").[3]  Thus, in the present case, joinder of the offenses is governed by Rule 8(a). *See* Figure 1, *infra* (showing clear difference between *Turoff* and *Hall*).

*U.S. v. Turoff*, 533 F.2d 1037 (2d Cir. 1988)

| Jay Turoff | Alan Silver | Harriet Silver |
|---|---|---|
| Conspiracy to commit mail fraud | | |
| Substantive mail fraud | | |
| Conspiracy to defraud U.S. in collection of tax revenues | | |
| Making false statements on tax returns | | |

*U.S. v. Hall*

| Peter Hall | Anne Hall |
|---|---|
| Count 5: Consp. to commit bankruptcy fraud | |
| Counts: 1–4 Substantive wire fraud Conspiracy to commit wire fraud | |

*Figure 1.*

---

[3] This also explains the semantics of our motion where we move for severance of counts one through four from count five instead of severance of count five from counts one through four.

B.   *The Government Argues as if Joinder of Defendants and Joinder of Offenses Are Governed by the Same Standard; They Are Not*

It is critical to compartmentalize the various arguments: (1) Anne Hall moves for severance of <u>defendants</u> under Rule 14 (AH Mot. 14–15)[4]; (2) Peter Hall moves for severance of <u>offenses</u> under Rule 8 (CH Mot. 1–4); and (3) Peter Hall, alternatively, moves for severance of <u>offenses</u> under Rule 14 (CH Mot. 4–5).[5]  The Government confuses the issues by arguing all of them in the same section without making a distinction.  In addition, the Government argues against severing <u>defendants</u> under its discussion of misjoinder. (*See* Opp'n 12.)  But, the defendants only argue misjoinder as a basis for severing <u>offenses</u>. (*See* CH Mot. 1–4.)

Notwithstanding that Rule 8(a) applies, the Government misquotes *United States v. Feyrer*, 333 F.3d 110 (2d Cir. 2003), by adding the word "offenses"—suggesting that *Feyrer* involved severance of offenses and defendants.[6]  However, *Feyrer* was only discussed joinder of <u>defendants</u>. *Feyrer*, 333 F.3d at 114 (quoting *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989) ("[W]e read the language of Rule 8(b) to mean that the joinder of *defendants* is proper where the alleged acts are 'unified by some substantial identity of facts or participants, or arise out of a common plan or scheme.'")).

---

[4]  For consistency, "AH Mot." will refer to Anne Hall's s pre-trial omnibus motion, and "CH Mot." will refer to Clyde Hall's pre-trial omnibus motion.  Although not mentioned in Anne Hall's memorandum of law, it is assumed her motion for severance is based on Rule 14 because it discusses prejudice.

[5]  Anne Hall has requested permission to join Peter Hall's motions.

[6]  The Government's memorandum states: "the Second Circuit has interpreted Rule 8(b) to allow joinder of *offenses* and defendants where two or more persons' criminal acts are 'unified by some substantial identity of facts or participants' or 'arise out of a common plan or scheme.'" (Opp'n 7 (partially quoting *Feyrer*, 333. F.2d at 114) (emphasis added).)

      C.    *The Government Incorrectly States that the Defendants Ask Only for "Discretionary Severance," but There Is No Discretion When Determining if Joinder Is Proper Under Rule 8*

The Government errs in its apparent belief that the Halls ask only for "discretionary severance." (Opp'n 12.) Although Mr. Hall does make an alternative motion based on prejudice, pursuant to Rule 14, the Government misconstrues Mr. Hall's main argument that joinder is improper (*i.e.*, misjoinder) under Rule 8. There is *no discretion* when deciding whether to sever under Rule 8. *See United States v. Lane*, 474 U.S. 438, 449 n.12 (1986) ("Rule 8(b) . . . requires the granting of a motion for severance unless its standards are met, even in the absence of prejudice . . . ."). It is only after deciding that joinder is proper that there is discretion to sever because of prejudice.

      D.    *"Substantial Nexus" Is Not the Correct Standard Under Rule 8(a)*

The Government argues "that there is a substantial nexus between the fraudulent bankruptcy petitions and the advance fee scheme." (Opp'n 13.) However, Rule 8(a)—not "substantial nexus"[7]—is the standard: If the offenses are not "of the same or similar character, or . . . based on the same act or transaction, or . . . connected with or constitute parts of a common scheme or plan," they cannot be joined. Fed.R.Crim.P. 8(a).

The Government offers three "connections" to prove this "substantial nexus." First, the Government claims that Mr. Hall used his apartment at 318 West 90th Street as GIIT's[8] representative office, and that GIIT was "simply a vehicle . . . used to promote the legitimacy of his scheme." (Opp'n 13.) However, this does not show how the bankruptcy fraud allegations and

---

[7] The Government cites no cases to support such a short form interpretation of Rule 8(a).
[8] "GIIT" is an acronym for Gramercy International Investment Trust.

4

wire fraud allegations are of the "same or similar character, . . . based on the same act or transaction, or . . . connected with or constitute parts of a common scheme or plan." Fed.R.Crim.P. 8(a). Although the Government claims this connection is substantial, Mr. Hall did not actually live at 318 West 90th Street during the alleged wire fraud conspiracy. The Indictment states that the "scheme to defraud" began "[f]rom at least in or about April 2005." (Ind. ¶4.) However, Mr. Hall moved out of 318 West 90th Street in January 2005. (Ind. ¶16.)

The Government then claims that the Halls allegedly used the GIIT trustee's bank account to hide assets and that the account used the 318 West 90th Street address. However, even if true, the fact that the GIIT trustee listed 318 West 90th Street as its address on its bank account fails to prove a common scheme with the wire fraud conspiracy, particularly given that the alleged wire fraud conspiracy occurred after the Hall's moved from 318 West 90th Street. Indeed, given that the Indictment claims the filings of fraudulent bankruptcy petitions predate the alleged wire fraud conspiracy, (*compare* Ind. ¶4, *with* Ind. ¶10), the Government's stated nexis is impossible: "Because the fraudulent bankruptcy petitions were filed to maintain GIIT's 'office' and the[sic] bolster the credibility of the advance fee scheme, the bankruptcy fraud *arises from* the advance fee scheme."[9] (Opp'n 14 (emphasis added).)

The Government then argues that joinder of offenses is proper because the names of alleged co-conspirators were listed as creditors on the Halls' bankruptcy petitions. The Government feels this supports joinder because it shows "common participants"; however, "common participants" is not a standard for joinder of offenses. The Government incorrectly cites *United States v. Ferrarini*, 9 F. Supp. 2d 284 (S.D.N.Y. 1998), for the proposition that in

---

[9] The Government also states that "proof of the advance fee scheme is necessary to put the bankruptcy fraud in an understandable context for the jury." (Opp'n 14.) But again, the advance fee scheme is alleged to have occurred <u>after</u> the bankruptcy fraud.

5

order for joinder to be proper "it is sufficient that count[sic] are 'connected by common facts or participants.'" (Opp'n 15 (quoting *Ferrarini*, 9 F. Supp. 2d at 292).)  But, *Ferrarini* deals with Rule 8(b)—not Rule 8(a) and is therefore irrelevant.  Further, the actual standard is "substantial identity of participants." *Id.* at 291.  That portion of *Ferrarini* erroneously substitutes the word "substantial" with "common," despite its reference to the Second Circuit's interpretation in *Attanasio*, which stated, "We read this to mean that the acts must be unified by some *substantial* identity of facts or participants . . . ." *Attanasio*, 870 F.2d 809, 815 (emphasis added).  Indeed, *Ferrarini* correctly quotes the standard earlier in the opinion:  "The Second Circuit has interpreted this requirement to mean that the acts must be 'unified by some *substantial* identity of facts or participants . . . .'" *Ferrarini*, 9 F. Supp. 2d at 291.  The word "substantial" changes the nature of the standard.  The identity of participants must be substantial because, otherwise, joinder would always be found proper if there is one common "participant."  Regardless, "substantial identity of participants" is not the standard for determining if joinder of offenses is proper under Rule 8(a).

II.     IN ARGUING THAT JOINDER IS NOT PREJUDICIAL, THE GOVERNMENT INCORRECTLY ASSERTS THAT EVIDENCE OF THE ADVANCED FEE SCHEME WOULD BE ADMISSIBLE TO PUT THE BANKRUPTCY FRAUD INTO CONTEXT

    A.     *The Government Incorrectly Asserts that Evidence of the Advanced Fee Scheme Would Be Admissible to Put the Bankruptcy Fraud into Context*

Mr. Hall has argued that joinder of offenses would unfairly prejudice him because it would allow an "end run" around Rule 404(b) of the Federal Rules of Evidence.  The Government, however, alleges it can introduce evidence of the advance fee scheme "to explain and put into context the bankruptcy fraud." (Opp'n 16.)  Aside from the fact that the Government cites no authority for its argument, this explanation fails for several reasons.

6

First, because the wire fraud conspiracy occurred after the bankruptcy fraud conspiracy, it is irrelevant; introduction of wire fraud cannot logically be thought of as proof of motive or intent for the bankruptcy fraud. *See* Fed.R.Evid. 404(b).

Further proof that the alleged frauds are misjoined is the fact that 404(b) is not satisfied by both cases—when two offenses are logically related and correctly joined, this burden is generally not a problem. Besides the fact that introduction of wire fraud evidence will unfairly prejudice Mr. Hall's defense against bankruptcy fraud, the Government fails to appreciate that introduction of bankruptcy fraud evidence will unfairly prejudice Mr. Hall's defense against the wire fraud charges. It follows that in order to try the cases together fairly, introduction of evidence of both must satisfy Rule 404(b).

> B.     *The Cases the Government Cites for the Proposition that Mrs. Hall Cannot Testify Without Incriminating Herself are Not Applicable to the Facts of This Case*

The Government once again confuses the issue by citing inapplicable case law for the proposition that Mrs. Hall cannot freely testify in a separate trial on behalf of her husband. Both cases cited by the Government, *United States v. Wilson*, 11 F.3d 346, 354 (2d Cir. 1993) and *United States v. Solomonyan*, 451 F.Supp.2d 626, 651 (S.D.N.Y. 2006), deal solely with severance of <u>defendants</u>—not <u>offenses</u>—where the defendants are both charged with the same counts, and no defendant is charged in a different count. In both *Wilson* and *Solomonyan*, one defendant moved for severance of <u>defendants</u> so that his co-defendant could testify on his behalf. However, in both cases, both defendants were charged in the same counts. In *Wilson*, both defendants were charged with conspiracy to distribute and possess with intent to distribute

---

[10] Mr. Hall argues that joinder is further unfairly prejudicial because it forces his wife to choose between either (a) testifying on behalf of him, in which case she would waive her constitutional right to not testify; or (b) not testifying, which would leave Mr. Hall without a key witness in his wire fraud defense.

7

cocaine and two counts of distributing and possessing with intent to distribute cocaine. 11 F.3d at 348-49. In *Solomonyan*, both defendants were charged with a conspiracy to engage in the business of brokering activities with respect to the import and sale of foreign military weapons. 451 F. Supp. 2d at 634. Mr. Hall moves to sever the <u>offenses</u> he alone is charged with. The Halls will still be co-defendants in the bankruptcy fraud case; however, Mrs. Hall would be able to testify freely in the wire fraud case—an offense she is not charged with.[10] *See also United States v. Owen*, 500 F.3d 83 (2d Cir. 2007) (suggesting severance and/or seeking limited immunity as a means to gain access to a co-defendant's potential exculpatory statements).

III. THE GOVERNMENT IS INCORRECT IN ASSERTING THAT THE SUPPRESSION CLAIMS CAN BE REJECTED WITHOUT A HEARING

Mr. Hall moves this Court to suppress evidence that was seized from his home at 270 Riverside Drive, #9A, on January 9, 2007. Regardless of whether the independent source doctrine applies, a hearing is necessary because facts are in dispute. If the Court determines that egregious police conduct negates application of the independent source doctrine, a hearing is necessary to determine what occurred that morning. Alternatively, if the Court determines that the independent source doctrine could apply regardless of the severity of police misconduct, a hearing is necessary to determine if the doctrine does in fact apply to the facts in this case. In other words, a hearing is necessary to determine whether there was a legal search, and if so, whether information gained from the illegal search affected the agents' decision to seek a warrant.[11]

---

[11] A suppression hearing can resolve questions such as: (1) whether the agents searched the home and seized propery prior to the issuance of the search warrant; (2) whether the agents impermissibly led Mr. Hall around his home in order to view other items in "plain view"; (3) whether the decision to seek the warrant was prompted by information gleaned from the illegal conduct; and most *intriguing* (4) why the agents did not apply for the search warrant prior to making the arrest.

8

IV.     THE INDEPENDENT SOURCE DOCTRINE IS NOT APPLICABLE TO THIS CASE BECAUSE THE AGENTS EGREGIOUSLY SEARCHED THE HALLS' HOME BEFORE BEING ISSUED A SEARCH WARRANT

The Government asserts that even if "the law enforcement agents conducted a wholesale illegal search of the . . . apartment prior to obtaining the search warrant . . . , the Hall's motion to suppress must fail because there existed more than sufficient probable cause to obtain the warrant lawfully." (Opp'n 21–22.) This cannot be the law. "The warrant requirement must mean something and we cannot allow the exception to swallow the rule." *United States v. Madrid*, 152 F.3d 1034, 1041 (8th Cir. 1998).

In *Madrid*, the Eighth Circuit stated that police officers cannot be granted "cart blanche to trample constitutional rights whenever they might have probable cause to obtain a search warrant and thereby placing them in a better position because of their illegal acts." *Id.* at 1041. The court discussed at length the use of the doctrine and contrasted the case with *Segura* and *Murray,* stating that the government's intrusion far exceeded that which occurred in those cases. *Id.* The court made clear that it does "not read those cases as requiring the application of the inevitable discovery doctrine without regard to the severity of the police misconduct." *Id*. The court explained that "the only way we can effectuate the warrant requirement's deterrent function is to decline to extend the application of the inevitable discovery to the facts of this case."[12] *Id.* The court determined that the doctrine is not, and cannot, be absolute by noting that they "cannot agree with the government's position . . . that the inevitable discovery doctrine bars

---

[12] The inevitable discovery doctrine is a subset of the independent source doctrine. *See Murray v. United States*, 487 U.S. at 539 ("The inevitable discovery doctrine . . . is in reality an extrapolation from the independent source doctrine.").

application of the exclusionary rule under any and all circumstances in which the police had probable cause to obtain a search warrant." Id. at 1041 n.9. The court held

> that absent exigent circumstances, the inevitable discovery doctrine[13] is inapplicable to a warrantless search when police officers exploit their presence in the home as they did in this case. Our holding insures that the balance achieved by the inevitable discovery doctrine preserves the warrant requirement's deterrent function. . . . The warrant requirement must mean something and we cannot allow the exception to swallow the rule.

*Id.* at 1041.

This Court should decide this matter in a manner that deters this type of warrantless rummaging and seizing. As *Madrid* notes, the warrant requirement is meaningless when the government believes it can begin ransacking a target home in anticipation of the issuance of a search warrant. 152 F.3d at 1041.

V.      EVEN IF THE COURT FINDS THE INDEPENDENT SOURCE DOCTRINE IS NOT PER SE INAPPLICABLE, IT SHOULD SUPPRESS THE SEIZED ITEMS BECAUSE THE ILLEGAL SEARCH AFFECTED AGENTS' DECISION TO SEEK A SEARCH WARRANT

> An officer with probable cause sufficient to obtain a search warrant would be foolish to enter the premises first in an unlawful manner. By doing so, he would risk suppression of all evidence on the premises, both seen and unseen, since his action would add to the normal burden of convincing a magistrate that there is probable cause the <u>much more onerous burden of convincing a trial court that no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant</u> or the magistrate's decision to grant it.

*Murray*, 487 U.S. at 540 (Scalia, J.) (emphasis added).

Three facts are undisputed: first, that the Government asserts that "there was ample independent probable cause to believe that the 270 Riverside Drive apartment contained relevant evidence"; second, that the Government did not have, nor apply for, a search warrant prior to entering the Hall home; and third, several hours after the agents

began their illegal search and seizure, the Government sought and obtained a search warrant. These three undisputed facts necessitate a hearing to determine whether "information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it." *Id.*; *see also United States v. Johnson*, 994 F.2d 980, 987 (2d Cir. 1993) ("[T]he warrant must be supported by probable cause derived from sources independent of the illegal entry; and . . . the decision to seek the warrant may not be prompted by information gleaned from the illegal conduct." (citing *Murray*, 487 U.S. at 482)).

The Government states that "there is *no* basis to conclude that law enforcement agents decided to seek the search warrant based on their limited, plain view observations of a clipboard, a piece of unopened mail, and an office." (Opp'n 27) (emphasis added.) But Mr. Hall's contention is that there was more than limited plain viewing—there was an illegal search of the whole apartment. And additionally, there is at least one basis to believe that the search instigated the warrant application: the agents did not actually have a search warrant that morning.

## CONCLUSION

For all of the aforementioned reasons, it is respectfully submitted that the Court should order the severance of offenses as a result of being improperly joined, or in the alternative, order the severance of offenses because joinder prejudices defendant Clyde Hall; order the suppression of all items seized as a result of a warrantless search, or in the alternative, order the suppression of all items seized because the basis for the probable cause was illegally searched; and grant such other relief in the interest of Justice as the Court deems warranted.

Dated: New York, New York
March 11, 2008
This document has been electronically filed.

                                        Respectfully submitted,

                                        s/ James A. Cohen

                                        JAMES A. COHEN, Esq.
                                        MICHAEL W. MARTIN, Esq.
                                        Attorneys for Clyde Hall

                                        **LINCOLN SQUARE LEGAL SERVICES, INC.**
                                        33 West 60th Street, 3rd Floor
                                        New York, New York 10023
                                        (212) 636-6934

*Legal Interns*
Christopher M. Barrett
Chae Kim
Anu R. Sawkar